Please call the third case. 314-0515, Keystone Steel & Wire v. S. Smith Good afternoon. It's a plea to the Court of John Makarovsky on behalf of Appellant Keystone Steel & Wire. I realize what the standard is on review here, but it is this Court's obligation to review the entire record to see if there is support for the Commission's decision. Do you think we don't do that? I think you do. I think a clearly opposite conclusion is apparent in this case. So there is no support for the Commission's decision in this case? I do not believe so. It's clear that the decision cannot rest on speculation or conjecture, and it's Petitioner's burden to prove all elements of his case. What about Dr. Maurer's opinion? Dr. Maurer's opinion, an expert's opinion, needs adequate foundation pursuant to the gross case. Dr. Maurer admitted that he did not review the initial x-ray of January 27th, see the MRI report, or any prior records. What's that photo? Is it the admissibility of his opinion or only the weight to be given to it? I think it goes to both. He said he didn't review that record, his entire opinion was inadmissible? No, his opinion is admissible, but you have to look at what his other testimony was. He admitted that he could not state within reasonable degree of medical surgical certainty that any finding on the x-ray or MRI was changed by this incident. Now, when you look at the arbitrator's decision, which the Commission adopted, the arbitrator premised her finding on page 17 of her decision, stating that it was significant that the MRI of February 23rd, 2010, showed moderate osteoarthrosis, and that Dr. Carlson on April 4th, 2011, believing that he took an x-ray on that date, showed significant osteoarthritis and was a worsening of the condition from when Petitioner was seen on January 27th. The problem with that is, there was no new x-ray on April 4th, 2011, and Dr. Carlson's report and testimony is clear that he was viewing the films from January 27th, 2010, the date of the incident, and stating that is what showed significant arthritis. So I review the case to the Commission, believing that the arbitrator's decision is flawed. I devote my entire brief to the causation argument. I get a decision from the Commission that the sole issue of dispute is the $270 medical bill, but the Commission, the arbitrator's decision was wrong because there was no MRI of February 23rd, 2010. There clearly was an MRI of February 23rd, 2010. Dr. Maurer testified regarding it, Dr. Wainer based her report, Dr. Carlson. So I file for a corrected decision. I get back, okay, causation was in dispute, but there was still no MRI. Now, what kind of decision is this from the Commission? I submit that case law is clear that when there is a pre-existing condition, which every single doctor who offered any type of report or testimony agreed to in this case, that this gentleman had bilateral right hip and left cam deformity, osteoarthritis. All doctors, Dr. Wainer, Dr. Maurer, and Carlson, indicated that it was all pre-existent. All doctors admitted that the arthritic condition in and of itself would cause pain stiffness, lead to hip pain, and eventual surgery. All right, yes, the claimant testified he did not experience any symptoms in his right hip prior to the work accident, and the medical records admitted to evidence do not reference any complaints involving the right hip prior to the work accident. Is that true? That is his testimony. However, let's look at the contemporaneous records of treatment from Dr. Pena on January 28th. Dr. Pena saw him. The complaints were primarily in the right buttock and right lateral thigh. It was suspected that he had a back condition. He had a prior back claim that was settled. He had a spondylolisthesis. Dr. Pena also examined the hip. He found no evidence of any soft tissue, asymmetry, or any finding relative to the hip. He was subsequently sent for an MRI of the hip. That came back as showing no change from the prior study, and when Dr. Pena sees him again, examines him, again, no positive objective findings relative to the hip, the only condition being lateral thigh abrasion. Again, no findings. Let's assume he had a pre-existing arthritic hip. It's a given. The evidence establishes that although the arthritis was pre-existing, the claimant was asymptomatic until the work accident of January 27th. Thereafter, he testified he began to experience symptoms involving the right hip that progressively worsened and continued to the arbitration date of the hearing. And if the Commission believes that, what's the problem? The problem would be is that he did not voice those complaints about his hip when seen. Dr. Mauer admitted that this person, being a frequent litigant, could voice those complaints for the purposes of establishing a compensable claim. And even when he went to Dr. Rands, which was in February, his complaints dealt with his back. Okay, so now you're suggesting that maybe he's a malingerer, and you may have some basis to argue that, except the Commission believed him and chose to credit his testimony. I would accept that. So how do we ignore that? The basis is because they adopt the arbitrator's decision, who relies upon there being an x-ray of April 4, 2011, in stating that Dr. Carlson did not state there was no aggravation of the condition, when there is no x-ray of April 4, 2011, and that the x-ray that Dr. Carlson was referencing was January 27, 2010, the date of the accident, which already shows the severe arthritic condition. We then take that with Dr. Mauer stating that there is no evidence on x-ray or MRI that he could point to to state that the structure of the hip was changed in any way. I cited the case law that indicated by the appellate court when there is evidence of an obvious preexistent condition, there needs to be objective evidence to support an aggravation. Here, all doctors, Mauer, Carlson, Wayner, said there is no change on the x-ray. You're saying as a matter of law there has to be objective evidence? Yes. What case do you cite for that proposition? I cited Frontier IV and General Electric. Did we affirm the Commission in that case? It may have been an affirmance, but that was the court's reasoning that there needed to be objective evidence. I've never heard of a standard where there has to be objective evidence to support an aggravation of a pre-existing injury. A chain of events can do it. Okay, a chain of events. Let's look at the chain of events. He was released to and went back to his regular job. Let's look at Carlson's opinions. He admits that it's possible that the condition of the plaintiff's right hip as seen on the February 23, 2010 MRI could be completely asymptomatic. He also is unaware of any treatment records suggesting the client had any symptoms to his right hip prior to January 2010. And then he responds that while he would not rule out that the trauma reported by the claimant is the cause of his symptoms and ongoing problems, he did imply that it was most likely a possibility that the relationship between the work accident and the onset of the claimant's symptoms was coincidental. If you take Dr. Carlson's report in totality relative to that issue, he stated it would depend upon a multitude of factors. Severity of the trauma, severity of the arthritis. In this case, he stated that the trauma was minimal. Now, there was reference that the pubic sympsis had some edema, but the location of that is like the difference between where I-1, Wisconsin is. And even Dr. Maurer said, I don't know how that shows up. It's not in the hip joint. Yeah, but think about what you're saying. If your argument, the opposite conclusion is clearly apparent, you've got Carlson that you're hanging your head and at least acknowledges that he could have been asymptomatic from his professional opinion, and you have the claimant testifying he was asymptomatic. Where are you going with this manifest weird? Okay, what Carlson said in this particular case, he said it's a possibility, but it was not probable or the likely condition. Well, it wasn't his opinion. But he said it was possible. Maurer opines that the accident made his pre-existing arthritis worse and accelerated his need for hip replacement. That was his opinion on direct, but on crossed, when asked what's the basis of that opinion and asked to say if there was any change on the x-ray of January 27th that would be attributable to succurance, he said no. Yes, he testified that the right hip condition was not symptomatic before the accident and was after. That was based upon the reliance of his opinion. But in conjunction with that, he stated that the employees could have started to complain to foster his claim for litigation. And when you look at the testimony of a supervisor, this gentleman had a one and a quarter inch. Counsel, you know, all these arguments are great arguments to the commission and great arguments to the arbitrator. But this is a manifest weird case. There is no right answer in a manifest way case. It could go either way. The question becomes, is there evidence in the record which, if believed, will support the opinion of the commission? Is the opposite conclusion clearly apparent? And if the evidence is in the record, you may not believe it. You may not think the commission should have believed it. But if they believe it and it's in the record, what are we to do with it? Well, I think you could remand the case where the arbitrator bases her opinion of a worse thing than the causation based upon an x-ray of April 11th that doesn't exist. And the commission says there never was an MRI, which was the focal point of everyone's evidence. So how much scrutiny did the commission give any argument when that was the entire focus of the brief submitted to the commission? Did the commission and the arbitrator specifically mention this fictional April 11th? Yes. Page 17 of the arbitrator's decision, it reads, Dr. Carlson was of the opinion that Petitioner had pre-existing dysplastic of the right hip and significant osteoarthritis of the right hip, and that these conditions are not cause-related to the injury on January 27th. The arbitrator finds it significant that the MRI of the right hip just taken weeks after the accident only revealed moderate osteoarthritis of the right hip. Therefore, the arbitrator finds the presence of significant osteoarthritis noted on April 4th, 2011, was indicative of a worsening condition from when Petitioner was initially injured on January 27th, 2010. And if you look at Carlson's own written report, he is referencing reviewing the January 27th, 2010, x-ray. He didn't even take x-rays on April 4th, 2011. So the very finding upon which the commission relies upon, in addition to believing that there was no MRI, does not exist. So if you look at the totality of the evidence, with the supervisor testifying this man walked with a hitch or swagger relative to his right hip, came back to work February 9th, 12 days after the accident, continued to work for nearly two years up and through the date of arbitration, and each doctor stating that there was no change diagnostically on the x-ray or MRI, if that doesn't win a case for the employer on causation... Did the commission and the arbitrator actually mention an x-ray of April 4th, 2011? Or did they talk about the presence of significant osteoarthritis as noted on April 4th, 2011? The only reference in Dr. Carlson's report is referring to the x-ray. And actually the exam was on April 14th, so that may have been a typographical error by the arbitrator. But they didn't ever actually say that there was an x-ray taken on April 4th, did they? Well, it's implying that there was an MRI and it's comparing it to significant... But did they ever actually say there was an x-ray on April 4th? That would be a yes or a no. That would be no, but I would say that if you read it in conjunction with what is written, if you look at Carlson's report, he said that significant arthritis was on January 27th, 2010. That's what he says in looking at the x-ray. So his testimony was clear that it wasn't changed, accelerated, or aggravated. Even if you look at my one, he never said that this accelerated... You're throwing out this x-ray as a red herring. It's a little bit misleading and disingenuous. Didn't the commission, yes or no, issue a corrected decision that said, the commission corrects a clerical error. I'm quoting. On page 17, in the third full paragraph, the arbitrator states, the arbitrator finds it significant that the MRI of the right hip, taken just weeks after the accident, indicated the commission finds that no MRI was taken. Didn't they make that statement they found no MRI was taken? They made it worse, because there was an MRI. And that's what my argument was, there was no x-ray. So they just doubled their mistake by saying there was no MRI. I think what I'm saying is, don't stand up here and tell us that they said there was an x-ray when they didn't say it. If you want to say they implied it, then tell us it's an implication. It's got to be fair with us. Understood. Were there any medical records from April 4th? There was no medical record from April 4th. They said no to April 4th. There are several jumps here. You said they must have meant the 14th. Well, the 14th, and they meant the 14th. What was noted then was from an x-ray on the 27th. But I was asking, is there any place they could have been looking at that there were records from the 4th? The only thing that I could suggest is that Dr. Carlson's report that was part of his deposition exhibit, actually deposition exhibit number 9, was dated April 18th and referenced the exam taking place on April 14th, 2011. But I think Dr. Carlson's testimony is clear that the x-ray that showed a significant arthritis was January 27th, 2010. Yeah, that's correct. There was this passage about the 4th as a reference to Carlson's findings. The x-ray was on the January date, correct? Correct. Counsel, you have time. Thank you. Counsel, you may respond. Thank you. May it please the court, opposing counsel, my name is Kevin Elder. I represent Mr. Kleinschmidt in this matter. And I want to pick up right where we left off. Mr. Makarowski is pointing to two claimed errors. One made by the arbitrator concerning this x-ray. And there is absolutely no mention of an x-ray in April of 2011. That is something that he implied. What arbitrator Puglia relied on is that Dr. Carlson that day said petitioner had significant osteoarthritis. And she's comparing it back to the MRI the previous year that was interpreted by a radiologist to show only mild to moderate. And that was only one of six things that she relied on. The whole case didn't hinge on that to begin with. So there's no mention of an x-ray. There was no x-ray done. So when Mr. Makarowski presented his briefs to the industrial commission, complaining that the arbitrator found that some x-ray had occurred, that was a red herring to the commission. So in their decision, and yes, they made a mistake and didn't mention the causal connection. Absolutely, causal connection is the whole issue here. But they meant to say there's no finding, there's no evidence that there's an x-ray in there. And instead they mentioned the MRI. When they did their corrected decision, they got it right on the issues, but they kept the whole body of the rest of their decision the same. So the MRI mistake was compounded. There is no factual dispute that an MRI was done, and there is no factual dispute that an x-ray was not done in April of 2011. So why is he implying there was an x-ray done? Because he's very good at creating issues that would favor his client. And he's reading into that, and he would have you read along. Isn't that what all good lawyers do? I think Mr. Makarowski is an excellent lawyer. Another one of the issues... And that's being recorded for Mr. Makarowski's future benefit. You're on tape. Another one of the issues that is raised in his brief is this potential inconsistency in the evidence as to which rung the latter plaintiff fell from. Is there any significance as to which rung he was on, given the mechanism of the accident? Your Honor, I don't believe that there is any significance in that. He was climbing a ladder. His history was consistent from an hour after this happened until the day of arbitration. He was climbing a ladder. His feet were wet. He slipped off a rung. He caught himself, and he swung into this container that has hard ridges on it. He had an abrasion on his right hip. He went to medical that day. He was diagnosed with a hip contusion that day by Dr. Moody, the occupational health doctor. He's been consistent all through. So some slight factual changes in the mechanism of the accident, I don't think impacts on this at all. I think he was consistent throughout. There is... In fact, I would submit to this Court that the preponderance of the evidence is in favor of compensability. And Arbitrator Puglia, who's a very conservative arbitrator, wrote a very thorough 19-page decision, which is unusual in war competence, you gentlemen know. And she cited several factors that supported her decision, not the least of which an uncontested accidental injury that was reported immediately with an abrasion found on the hip and the diagnosis of a hip contusion. An MRI that showed fluid in the right hip consistent with a resolving contusion. His family doctor records were put in. This man went to the doctor for everything. Not one mention of right hip. That's the best proof that a petitioner's attorney can bring in on whether this was a symptomatic condition. He's there all the time mentioning things, but for some reason, coincidentally, he doesn't mention this even though he has the pain. He doesn't... Yes, he doesn't mention that he's having any hip problems until this accident has occurred. And he's mentioned all kinds of little... He goes in there for a cold. And not one mention of a bad hip. His testimony is unrebutted. And let's not forget, he's got the same deformity, congenital deformity in both hips. And the arbitrator noted that his left hip that wasn't struck is completely asymptomatic. There's no suggestion for a left hip replacement. It's only the hip that was hurt. So she cites that. Dr. Maurer gives me the medical opinion that I need. And he's entitled to rely on what Mr. Kleinschmidt tells him. And he finds that the symptoms never evaded. So a fair conclusion for Dr. Maurer was that that started a process that never evaded, and that that's one of the reasons for the hip replacement. And then Dr. Carlson's opinion, if Mr. Makarowski has to hang his hat on that, then I feel bad for him. Mere coincidence that all of his problems started right after he has this accident to his... injury to his hip. So I don't think Dr. Carlson has any credibility here. So I think there's more than enough evidence for you gentlemen to affirm this decision and find that it's not contrary to the manifest way to the evidence. Thank you. Thank you, counsel. Counsel, you may reply. Thank you. I think each doctor states that there's no change on the x-ray or MRI that they could point to. And it's an arthritic condition, and it could have progressed naturally. Accelerated by the leg length discrepancy. It's a clearly congenital condition. And if you look at the chain events analysis, on January 28th and February 8th, the hip exam was normal and he wasn't complaining of a hip. He was complaining of a back and lateral thigh. And when that was ruled out, he went back to his regular job February 9th, continued to work it for two years. And the supervisor who worked with him for three years prior to this accident testified he had the same hitch and swagger in his gait that he did before the accident, continues to work. And Dr. Carlson said that the hitch and swagger in and of itself and the arthritic condition could cause pain, necessitating this. And Dr. Maurer agreed that there didn't need to be any traumatic event to lead to this hip replacement. And his complaints were focused on the back until Dr. Ray suggested an MRI. And that's when his complaints switched to make the hip the focus of his litigating claim. Thank you for your time. Thank you, counsel, both for your arguments. This matter will be taken under advisement. Written disposition shall issue. Court will stand adjourned.